830 So.2d 177 (2002)
Lazaro COUZO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-2468.
District Court of Appeal of Florida, Fourth District.
October 16, 2002.
Rehearing Denied November 22, 2002.
*178 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, Marrett W. Hanna and August A. Bonavita, Assistant Attorneys General, West Palm Beach, for appellee.
GROSS, J.
Lazaro Couzo appeals his convictions for burglary of a structure, conspiracy to commit burglary, and possession of burglary tools, rendered after a jury trial. We affirm.
During the late night hours of January 28, 2000, law enforcement officers from various agencies conducted a surveillance operation of a check cashing store in Boynton Beach. At approximately 11:00 p.m., police observed three vehicles, including a white utility van registered to the appellant, approach the check cashing store. The vehicles, including the white van, drove repeatedly back and forth between the alleyway behind the check cashing store and a gas station across the street.
From observation points on the ground and surrounding rooftops, the police watched three men on the roof of the check cashing store. The men crouched around a hole in the roof and lowered themselves into the store. A short while later, the phone lines of the store were cut and motion detectors within the store alerted its alarm system. Boynton Beach Police responded to the alarm, but, as instructed by the Florida Department of Law Enforcement, they treated it as a routine false alarm and left the area.
Several hours later, an inadvertent alert tone sounded from the police radio of an officer stationed on the roof of the check cashing store. The tone startled the three *179 men, and they fled along the rooftop with the officer chasing them. The men jumped off the roof and fled into a mangrove swamp behind the store.
Detective Plasencia followed the men on the ground as they ran along the rooftop and jumped off. After they landed on the ground, Detective Plasencia saw each of their faces, including that of Couzo.
Officer O'Connor and his K 9 followed the men into the swamp. The dog caught up to Couzo who was laying chest-down in the mud. Couzo refused to reveal his hands to Officer O'Connor despite two commands to do so; as a result, Officer O'Connor released the K 9, which bit Couzo on the back of the leg and buttocks. Because it was dark in the swamp, Officer O'Connor could not see Couzo's face. However, he identified Couzo shortly thereafter from the bite wounds.
One month after his arrest, Couzo was charged with: 1) burglary of a structure causing over $1,000 in damage; 2) conspiracy to commit burglary; and 3) possession of burglary tools.
Couzo pled not guilty, and, along with four other suspects, proceeded to a jury trial. The jury found Couzo guilty on all three counts as charged.
Couzo first objects to the testimony of an investigator that the license tag of the white van was "a Florida tag registered to a Lazaro Couzo." Instead of hearsay or other specific objection, Couzo's objection at trial was, "There's no foundation."
"The objection `lack of foundation,' like its first cousin `improper predicate,' is not a `specific ground of objection' within the meaning of section 90.104(1)(a) so as to preserve a ruling admitting evidence for appellate review." Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999). As this court has held, "appellate courts will not consider grounds for objections to the admissibility of evidence unless they have been stated with specificity at trial." Id.; accord Danson v. State, 62 Fla. 29, 56 So. 677, 678 (1911). Here, as in Jackson, the non-specific objection of "lack of foundation" did not adequately alert the trial court as to what was missing from the foundation.
Couzo next challenges the trial court's instruction to the jury on burglary of a structure. The judge instructed the jury:
Before you can find the Defendant guilty of burglary the State must prove the following three elements beyond a reasonable doubt:
One, the Defendant entered or remained in a structure owned by or in the possession of Bill Sease or Any Kind of Checks Cashed.
And, two, the Defendant did not have the permission or consent o[f] Bill Sease or Any Kind of Checks Cashed, or anyone authorized to act for Bill Sease or Any Kind of Checks Cashed to enter or remain in the structure at the time.
And, three, at the time of entering or remaining in the structure the Defendant had a fully-formed conscious intent to commit the offense of theft in that structure.
...
Even though an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with the intent to commit theft the Defendant must be found not guilty.
(Emphasis added). There was no objection at trial to the court's instruction.
Couzo relies on Lopez v. State, 805 So.2d 41 (Fla. 4th DCA 2001), to argue that fundamental error occurred. Lopez was a case where we reversed a burglary conviction *180 because the trial court included the "remaining in" language within its jury instruction.
This case is distinguishable from Lopez on the facts, taking into consideration the reasoning underlying that opinion.
In Lopez, the victim was awakened in the middle of the night by a person who "poked" at her while she slept. Id. at 42. When the victim awoke startled, she recognized the "poker" as the boyfriend of her next door neighbor, and immediately ordered him out of the house. Id. As the defendant headed back down the stairs and out the front door, he continually pleaded with the victim, "but this is Michael, lady." Id.
This court concluded that the trial court had fundamentally erred by including the "remaining in" language in its jury instructions; the instruction may have "confused or misled" the jurors into believing that they could convict the defendant of burglary even if he had formed an intent to assault the victim after entering the home. See id. at 43 (citing Wadman v. State, 750 So.2d 655 (Fla. 4th DCA 1999)).
Whether fundamental error has occurred when the "remaining in" language has been included in a burglary instruction turns on the facts of each case. We agree with the third district, which recently wrote:
[T]o the extent the defendant may be claiming that it is always fundamental error to give the "remaining in" part of the jury instruction in a case where "remaining in" does not apply, we disagree. The analysis depends on the facts of the individual case.
Johnekins v. State, 823 So.2d 253, 257 (Fla. 3d DCA 2002).
The manner in which Couzo entered the building distinguishes this case from Lopez. In Lopez, the defendant walked in the front door of the victim's home. In fact, the victim testified that the front door had been left ajar. 805 So.2d at 42. This method of entry left room for doubt as to when the defendant formed his intent to "poke" the victim.
In this case, there was no innocent explanation as to why Couzo punched a hole in the roof of the check cashing store in the middle of the night. This was not a case where Couzo's criminal intent could have formed after his entry into the store. Under section 810.07(1), Florida Statutes (2001), in burglary cases, "proof of the entering of such structure or conveyance at any time stealthily and without consent of the owner or occupant thereof is prima facie evidence of entering with intent to commit an offense." Unlike Lopez, the jury could not have been misled by the jury instruction as given.
Couzo's conduct was similar to the defendant in Johnekins. There, the defendant entered a warehouse by breaking a hole in sheetrock from an adjacent warehouse; when arrested, the "defendant had sheetrock dust on him and a piece of sheetrock in his trouser cuff." 823 So.2d at 254. The third district held that under these facts, the inclusion of the "remaining in" language in the jury instruction was "mere surplusage and certainly not a matter of fundamental error." Id. at 257.
To affirm the burglary conviction here is not inconsistent with the recent case of Floyd v. State, 27 Fla. Law Weekly S697, S702, ___ So.2d ___, ___, 2002 WL 1926223 (Aug. 30, 2002). There the supreme court reversed a burglary conviction where the "remained in" language was included in an armed burglary jury instruction. However, Floyd was a case where the homicide victim and the defendant knew each other; there was evidence that they had an extended discussion on *181 the victim's porch and in her house before the fatal shooting. Unlike this case, in Floyd it could have been argued that the defendant's intention to commit a crime in the structure coalesced after he entered the victim's home.
On the state's cross appeal, we find that the trial court did not abuse its discretion in making a ruling under section 90.403, Florida Statutes (2001). See Melendez v. State, 700 So.2d 791, 793 (Fla. 4th DCA 1997).
AFFIRMED.
STONE and MAY, JJ., concur.